EL PUEBLO DE PUERTO RICO, peticionario y apelado, *v.* ENRIQUE BÁEZ, opositor y apelante.

No. 3965.—*Sometido:* Diciembre 8, 1931. *Resuelto:* Noviembre 22, 1932.

R. *Rivera Zayas* y *E. García,* abogados del opositor y apelante; *E. Díaz Viera, Fiscal Auxiliar* y *José R. Gelpí, Fiscal del Distrito de Mayagüez,* abogados de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

El apelante, después de ser acusado ante la Corte de Distrito de Mayagüez y luego de haberse ordenado el traslado a instancias del fiscal, fué juzgado y convicto en la Corte de Distrito de Aguadilla. Los autos han sido elevados en dos secciones, una relativa al procedimiento ante la Corte de Distrito de Mayagüez y la otra al procedimiento ulterior en

la Corte de Distrito de Aguadilla. Estas dos transcripciones vinieron separadamente en épocas distintas, una certificada por el Juez de la Corte de Distrito de Mayagüez y la otra por el Juez de Distrito de Aguadilla. Fueron radicadas como casos separados en esta corte y las partes radicaron alegatos separados. La transcripción que ahora tenemos ante nos procede de la Corte de Distrito de Mayagüez y el alegato del apelante ataca la resolución que ordenó el traslado del caso.

El apelante cita el caso de *El Pueblo* v. *Collazo*, 33 D. P.R. 49, para sostener la teoría de que la moción de traslado en el presente caso y las declaraciones juradas adheridas a la misma no aducían hechos suficientes para justificar el traslado. En el caso de Collazo, esta corte adujo las razones por las cuales debía confirmarse la negativa de la corte de distrito a ordenar el traslado. De ello no se desprende que la concesión del traslado bajo las circunstancias de dicho caso hubiera sido revocada por los mismos fundamentos. La doctrina del caso de Collazo es que la resolución de una corte de distrito, al solicitarse el traslado, ora sea adversa o favorable al peticionario, no será alterada en apelación en ausencia de un abuso palpable de discreción.

Los hechos principales en el presente caso son esencialmente distintos a los del de Collazo. En la moción que ahora tenemos bajo nuestra consideración, el fiscal de distrito manifestó que la opinión pública en el momento de archivarse la moción estaba fuertemente prejuzgada en favor del acusado y en contra de El Pueblo, conforme lo revelaban las declaraciones juradas que se acompañaban; que el público había evidenciado su prejuicio en la sala de la corte expresando sus sentimentos en ocasión anterior cuando el acusado fué absuelto de otro delito; que en el juicio anterior el testimonio de ciertos testigos que declararon sobre el carácter del acusado, hombres de gran prestigio e influencia en todo el distrito, había impresionado no solamente al jurado sino al público en general; que el acusado mismo era un hombre de gran influencia y prestigio en todo el distrito debido a sus

largos servicios como empleado del Registro de la Propiedad
de San Germán y como Secretario de la Corte de Distrito de
Mayagüez; que su carácter y reputación jamás habían sido
atacados y que se decía en sitios públicos que él era la víctima
inocente de otras personas no mencionadas; que el acusado
estaba emparentado con familias de alta posición social, polí-
tica y económica en el distrito, tales como los García, de
Sabana Grande, los Nazario, de San Germán, y los Cabanillas.
de Mayagüez, y que esto afectaría el sentir del jurado; que
ya se había desinsaculado treinta y seis miembros del *panel*
general que habían servido en el gran jurado o en el pequeño
en la investigación y juicio de otros procesos contra el acu-
sado, o que habían sido recusados y examinados por la corte;
que el gran jurado había declarado no fundadas cinco de las
siete acusaciones presentadas contra el acusado, acusaciones
en que la prueba consistía casi enteramente de documentos
de la corte y cheques con la firma del acusado; y que por
todas estas razones no se podía obtener un jurado justo e
imparcial en el distrito.

Durante la repregunta el fiscal manifestó que cuando una
de las dos acusaciones devueltas por el gran jurado parecía
haberse perdido, el gran jurado tomó uno de los cinco casos
ya descartados y enmendó el endoso que aparecía en el mismo,
eliminando la palabra "No", de suerte que leyera "Fun-
dada", y que más tarde, al hallarse la acusación perdida, el
endoso enmendado en la acusación que originalmente aparecía
como "No fundada" fué enmendado nuevamente. Su decla-
ración no fué controvertida por la de ningún otro testigo.

El fiscal de distrito presentó la prueba documental some-
tida al gran jurado en los cinco casos en que dicho cuerpo
se había negado a acusar al apelante. Esta prueba no fué
incluída en la transcripción de autos en apelación. El fiscal
de distrito también declaró respecto a la substancia y efecto
del testimonio presentado al gran jurado, en relación con la
prueba documental en estos cinco casos, respecto a la sufi-
ciencia de la prueba en cada uno de ellos y acerca del hecho

de que ésta no fué controvertida. Su declaración respecto a este asunto está igualmente incontrovertida por la de cualquier otro testigo.

La repregunta del fiscal de distrito abarcaba un número de otras cuestiones mencionadas en la moción de traslado. Posteriormente testigos del acusado declararon respecto a algunas de estas cuestiones. En interés del laconismo omitiremos en esta opinión el repetir este testimonio, así como el hacer cualquier discusión del mismo.

Rafael Igaravídez, Jefe de Distrito de la Policía Insular, manifestó en su declaración jurada que en el momento de ser arrestado el acusado, había oído en distintos sitios públicos de la ciudad de Mayagüez, en diferentes grupos, muchos comentarios encomiásticos al efecto de que el acusado era incapaz de cometer delito alguno y que era víctima de algún enemigo; que en estas discusiones la opinión pública estaba unánimemente inclinada en favor del acusado; que cuando el acusado fué absuelto de cierto delito, al salir de la corte acompañado por un gran número de personas, hubo una expresión de regocijo popular; y que el deponente era del criterio que sería imposible para El Pueblo de Puerto Rico obtener un juicio justo e imparcial en la Corte de Distrito de Mayagüez, debido a la gran popularidad e influencia del acusado. En la repregunta Igaravídez declaró que las personas a quienes había oído discutir el caso de Báez estaban capacitadas para actuar como jurados; que su experiencia le había hecho creer que sería difícil obtener un veredicto imparcial cuando el público se expresa en esa forma acerca del acusado; que por opinión pública el testigo quería decir la opinión manifestada por distintos grupos en la calle y en los casinos, tal cual fué expresada en la ocasión en que se absolvió al acusado y en el momento en que el gran jurado practicó la investigación; que el testigo vió a mucha gente felicitar al acusado al ser absuelto; que era fácil ver el regocijo público; y que el acusado abandonó la corte acompañado por un gran número de personas.

Felipe Yunqué, comerciante de Sabana Grande, formó parte del jurado. El manifestó en su declaración jurada que Enrique Báez había trabajado como secretario de la corte de distrito durante más de ocho años y como empleado del Registro de la Propiedad de San Germán durante unos doce años; que él estaba emparentado con los García, de Sabana Grande, con los Nazario, de San Germán, y con la familia Cabanillas, de Mayagüez; que todas estas familias eran muy influyentes en el distrito; que Báez era prominente en política, en la sociedad y entre los masones del distrito; que estaba muy bien relacionado con las personas más influyentes y con los jurados del distrito; que en el mismo distrito existía y había existido siempre un sentimiento público muy fuerte en favor de Enrique Báez; que él era considerado incapaz de haber cometido los delitos que se le imputaban; que muchos jurados estaban impresionados en favor del acusado; y que el declarante creía firmemente que sería imposible obtener un jurado y juicio justos e imparciales dentro del distrito. Durante la vista se preguntó a este testigo si él declararía al acusado culpable, de ser llamado como jurado en un caso contra Báez, si se presentaba prueba concluyente de la culpabilidad del acusado, y si se establecía la culpabilidad del mismo fuera de toda duda. La respuesta fué: "Yo le absolvería; yo no creo culpable a don Enrique Báez." El resto del examen a este respecto fué como sigue:

"P.—¿Usted no lo cree culpable?

"R.—No, señor.

"P.—¿Y si se le probase que es culpable lo absolvería?

"R.—Difícilmente lo acusaría.

"P.—¿Pero yo le pregunto que si se le probase que es culpable, usted lo absolvería?

"R.—Lo absolvería.

"P.—¿Y si usted prestase un juramento ante la corte, de que iba a condenarlo si era culpable, o a absolverlo si era inocente, usted violaría ese juramento?

"R.—Antes de prestar el juramento lo haría constar a la corte que yo no actuaría en ese caso como jurado.

"P.—¿Usted está seguro de que los demás jurados del distrito es-- tán en iguales condiciones que usted?

"R.—Yo podría asegurarle que hay entre ellos muchos que son incapaces de acusar a ese señor.

"P.—¿Usted conoce mucho a don Enrique Báez?

"R.—Sí, señor.

"P.—¿Es usted amigo de él?

"R.—Amigo no, pero lo conozco hace veinte años.

"P.—¿Y qué le hace pensar a usted así, con esa honradez tan fi- lantrópica?

"R.—Que él es un hombre honrado.

"P.—¿A qué vino usted a Mayagüez hoy?

"R.—Yo estaba actuando como jurado, y había un caso en el ca- lendario para el día 30 de noviembre, y entonces yo le dije al señor Fiscal que yo quería excusarme de ser jurado en ese caso porque no quería actuar en el juicio, porque yo conocía a don Enrique Báez y no lo creía nunca culpable del delito de que se le acusaba." ·

Este testigo también declaró que él había estado al tanto de la situación política local durante muchos años y que En- rique Báez siempre había servido bien a su partido; y que éste era uno de los mejores políticos, "uno de los mejores amigos que hemos podido tener aquí en el distrito."

Se presentaron diez y seis de estas declaraciones juradas. La mayoría, si no todos, de los deponentes acudieron a la vista y fueron examinados por el acusado. La reseña ante- rior bastará para dar una idea de la naturaleza y contenido de las declaraciones juradas y de la naturaleza y alcance de la investigación practicada por la corte de distrito. La mo-- ción y los *affidavits* sentaban una base adecuada para el pro- cedimiento ulterior, y, en unión de la prueba aportada durante la vista, eran suficiente justificación para la orden de traslado del caso.

La moción sobre traslado, acompañada de las decla- raciones juradas, fué archivada el 28 de noviembre de 1927 y señalada para ser oída el siguiente día. El acusado obtuvo una prórroga para contestar la moción, así como para presen- tar contradeclaraciones juradas. El 6 de diciembre el acusado obtuvo otra prórroga de quince días para el mismo fin. El

13 de diciembre se concedió una tercera prórroga. Esta venció el 31 de diciembre. En esa fecha el acusado solicitó se desestimara la moción de traslado. Esta solicitud fué señalada para ser oída el 5 de enero de 1928 y declarada sin lugar. Aquel mismo día se señaló la moción de traslado para el 9 de enero. El día de la vista el acusado solicitó se ordenara al secretario que extrajera los nombres de por lo menos cien jurados de la urna que contenía los nombres de los jurados regulares y que los jurados cuyos nombres fuesen así extraídos fuesen citados para que comparecieran el día señalado por la corte para ser examinados a fin de determinar si se podía obtener un jurado justo e imparcial. La moción fué declarada sin lugar. Se señala esto como error. El apelante cita 27 R.C.L. 822. El lenguaje del texto citado es que ''. . . en algunas jurisdicciones cuando el fundamento para solicitar el traslado es el prejuicio local, la corte puede suspender la vista de la moción hasta que pueda determinarse mediante el examen de un número suficiente de jurados si se puede obtener un juicio justo e imparcial.'' No hallamos abuso de discreción por haberse declarado sin lugar la moción del acusado.

■ Cuando el fiscal ofreció como prueba las transcripciones taquigráficas de los casos sometidos al Gran Jurado en que las acusaciones fueron declaradas no fundadas, el acusado solicitó que estas transcripciones le fuesen mostradas a fin de examinarlas. No parece haberse dictado resolución alguna a esta súplica. En la transcripción de autos aparece, a continuación de la súplica del acusado, una nota del taquígrafo que lee:

''Las investigaciones a que se refiere el señor fiscal y que fueron sometidas al Gran Jurado de este Distrito y declaradas no fundadas por éste corresponden a los números 6578, 6579 y 6580, de El Pueblo de Puerto Rico contra Enrique Báez por un delito contra El Erario de Puerto Rico; y 6577 y 6581 por un delito de abuso de confianza contra el mismo acusado, los que constan radicados bajo esos números en el Libro Registro de Causas Criminales de esta Corte. Uno de

los casos anteriormente referidos y que en la transcripción original fué transcrito, se suprime ahora, por disposición de la corte resolviendo una enmienda que fué presentada por el abogado del apelante con la conformidad del señor fiscal.''

Ninguna de las tres transcripciones a que se hace referencia puede hallarse en la transcripción de la evidencia certificada que forma parte del legajo de la sentencia. Fuera de la nota del taquígrafo nada hay que demuestre que la transcripción taquigráfica en ninguno de los casos sometidos fuera jamás admitida como prueba. Por el contrario, en una etapa posterior del procedimiento, mientras uno de los miembros del Gran Jurado declaraba como testigo del acusado, el letrado de la defensa, al exponer los motivos de una excepción, manifestó que el fiscal de distrito no había presentado como prueba las transcripciones taquigráficas de la investigación del Gran Jurado que hasta aquel momento no habían sido entregadas por el taquígrafo.

Cuando en la vista del presente caso el fiscal de distrito presentó otra prueba documental que había sido sometida al Gran Jurado, el acusado se opuso fundándose en que era ajena a la cuestión ante la corte y solicitó permiso para interrogar al fiscal, mas no pidió que se le diera la oportunidad de examinar los documentos así ofrecidos antes de que éstos fuesen admitidos. La corte admitió los documentos y declaró con lugar la petición del acusado.

El tercer señalamiento es que la corte de distrito cometió error al admitir ''esta prueba'' sin dar al acusado una oportunidad para examinarla. La transcripción taquigráfica de los procedimientos ante el Gran Jurado nunca fué presentada en corte ni admitida como prueba. La corte no cometió error al admitir la otra prueba documental sin antes dar al acusado la oportunidad de examinarla, toda vez que nunca se presentó objeción alguna por ese motivo y el acusado jamás solicitó se le concediera el privilegio de examinarla.

Incidentalmente en la moción de traslado el fiscal había manifestado que un gran número de gente prominente había

asistido al juicio anterior de Enrique Báez por otro delito de que se le había absuelto. El abogado de la defensa, al examinar al fiscal, le pidió que nombrara la gente prominente a que hacía referencia. Nombró un número de ellas. El abogado de la defensa entonces presentó una moción para que se ordenara al márshal que citara como testigos del acusado cuatro de las personas mencionadas. Esta moción fué declarada sin lugar. Si la investigación debió haberse ampliado en el sentido de incluir el examen de personas mencionadas como entre las presentes en un juicio anterior, sin hacer indicación alguna respecto al fin del supuesto examen, fué cuestión que caía dentro de la sana discreción del juez de distrito. No se demuestra abuso alguno de esa discreción. En realidad una de las cuatro personas compareció posteriormente y fué examinada por el acusado. El examen se limitó a otras cuestiones. Al testigo ni siquiera se le preguntó si había asistido al juicio anterior.

El acusado presentó como testigo a Pedro Acevedo y Fernando Oms Sulsona, dos de los miembros del Gran Jurado que había presentado dos acusaciones contra Báez y que se había negado a procesarlo en otros cinco casos. Ambos manifestaron que cuando el Gran Jurado se reunió para investigar las siete acusaciones presentadas contra Báez, no había acordado presentar dos acusaciones solamente. Cuando la defensa preguntó a Acevedo si algo había ocurrido entre el fiscal y el Gran Jurado durante el curso de la investigación, el fiscal se opuso y la corte sostuvo su objeción. La defensa se anotó una excepción por el fundamento de que el fiscal no había presentado como prueba la transcripción taquigráfica de las investigaciones que el taquígrafo no había entregado. La defensa le preguntó a Oms si el fiscal había tratado de obstaculizar la investigación en algún momento o en alguna forma. La corte nuevamente sostuvo la objeción y la defensa tomó excepción, por el fundamento de que el fiscal en su moción de traslado había ofrecido como prueba las declaraciones tomadas durante la investigación practicada por el Gran Jurado.

El abogado de la defensa entonces anunció que él había traído todos los miembros del Gran Jurado para que declararan respecto a si se había acordado desestimar cinco de los casos presentados contra Báez y "desestimar" (sic) dos, mas como ésta era evidencia acumulativa fué innecesario ofrecerla. Agregó que los había traído para que declararan además respecto a algo que había ocurrido entre el fiscal y el Gran Jurado durante el curso de la investigación. El juez dijo que él se había negado a admitir prueba respecto a la cuestión últimamente mencionada y que excluiría cualquier otra prueba de la misma especie si los miembros del Gran Jurado eran interrogados. A esta resolución la defensa tomó excepción.

Los autos no revelan la naturaleza del incidente ocurrido entre el fiscal y el jurado, a menos que asumamos que el Gran Jurado Oms hubiera contestado que el fiscal había tratado de entorpecer la investigación. No muestra el fin del acusado al tratar de probar lo que había ocurrido entre el fiscal y el Gran Jurado. Si el acusado hubiese expuesto su fin con claridad al juez de distrito (por ejemplo, si hubiese hecho constar claramente que deseaba probar por qué el Gran Jurado había dejado de procesar al acusado en cinco casos), si el juez se hubiese negado entonces a permitir que los miembros del Gran Jurado siguiesen siendo examinados y si la cuestión hubiese sido presentada a esta corte para ser revisada directamente por *certiorari* o en alguna otra forma antes de la celebración del juicio, posiblemente la resolución ordenando el traslado hubiese sido revocada. Véase *El Pueblo* v. (*Torres*) *Gómez,* 33 D.P.R. 185, y 28 C. J. 812, sección 113, *et. seq.* Sin embargo, antes de que esa orden hubiese podido ser revocada, hubiera sido necesario considerar que la actuación del Gran Jurado era únicamente una sola circunstancia y determinar si los otros hechos eran por si solos suficientes para sostener la conclusión relativa a la probable imposibilidad de obtener un pequeño jurado impar-

cial. El error, de haberse cometido, al resolver la cuestión en la forma presentada en Mayagüez, no es suficiente para justificar la revocación de la sentencia dictada en otro distrito.

■ Otra contención es que la Corte de Distrito de Mayagüez carece de jurisdicción para ordenar el traslado de la causa. La teoría es que la solicitud de traslado fué prematura, toda vez que se presentó antes de la lectura de la acusación o de haberse hecho alegación alguna contra la misma. El apelante cita 27 R.C.L. 825 y *State* v. *Reid,* 28 Am. Dec. 572. La doctrina conforme es resumida por el Ruling Case Law, es que "generalmente cuando se solicita un traslado fundado en que es imposible obtener un juicio imparcial a causa de prejuicio local, una causa no puede ser trasladada antes de que surja la controversia, ya que el objeto de un traslado es conseguir un jurado imparcial y antes de que surja una cuestión de hecho no puede saberse que el juicio será celebrado ante un jurado."

Asumiendo que la doctrina es aplicable en ausencia de cualquier disposición estatutaria y que el requisito es jurisdiccional, (véase 16 C. J. 210, sección 316) ésta es cuestión que puede ser renunciada por un acusado y se suscita demasiado tarde al plantearse por primera vez en apelación.

El señalamiento restante trata de la cuestión de pasión, prejuicio y abuso de discreción en la apreciación de la prueba. No hallamos indicio de pasión o prejuicio ni tal manifiesto error en la apreciación de la prueba aducida durante la vista de la moción de traslado que requiera la revocación.

*Ni la resolución ordenando el traslado ni la sentencia condenatoria deben ser revocadas por ninguna de las razones aducidas en el alegato que ahora tenemos ante nos. Si la sentencia apelada debe ser confirmada o revocada por otros fundamentos es cuestión que será discutida y resuelta en otra opinión.*

El Juez Asociado Señor Córdova Dávila no intervino.